[Sac. No. 1516. In Bank.—June 30, 1909.]

JONATHAN W. FANCHER, Jr., Appellant, v. LEE R.
    FANCHER et al., Executors of Estate of George H.
    Fancher, Deceased, Respondents.

WILL—DIRECTION FOR ERECTION OF MONUMENT TO TESTATOR—PUBLIC
    LIBRARY NOT AUTHORIZED.—Under a provision in a will, whereby the
    testator sets apart from his estate the sum of twenty-five thousand
    dollars for his funeral expenses and proper interment of his remains
    and a suitable monument to his memory, and requests that his re-
    mains be buried in a particular place, the executors have no author-
    ity, after so disposing of his remains and erecting a monument at
    his tomb at the expense of two thousand dollars, to use the remain-
    der of the fund in the construction of a building to be dedicated to
    the purposes of a public library in a city, upon which a tablet was
    to be placed containing an appropriate inscription to his memory.

APPEAL from a judgment of the Superior Court of Mer-
ced County. E. N. Rector, Judge.

The facts are stated in the opinion of the court.

Ben Berry, for Appellant.

J. K. Law, for Respondents.

HENSHAW, J.—This cause was formerly heard and de-
cided in Department. A rehearing having been granted and
the cause having been heard by the court in Bank, the De-
partment opinion is hereby reaffirmed and adopted. That
opinion is as follows:—

"The complaint charged that the executors, as trustees of
a fund under the will of the deceased, purposed to make an
improper use of the fund, and prayed the court to restrain
them from so doing and to direct the proper distribution of
the moneys of the trust. The controversy grew out of the
following undisputed facts: George Hicks Fancher died
testate, leaving an estate of the value of about half a million
dollars. Clauses 14 and 15 of his will are as follows: 'I set
apart from my estate for my funeral expenses and proper
interment of my remains and a suitable monument to my
memory twenty-five thousand dollars. It is my request to

have my remains buried on my Bear Creek Ranch in township seven south, range fifteen east, Mount Diablo meridian.' The body of the testator was buried upon his ranch as requested. The executors proposed to expend the sum of about $2000 in the erection of a granite monument at his tomb, and to use the remainder of the fund, about $20,000, in the construction of a building in the city of Merced, which building was to be dedicated to the purposes of a public library. Upon a tablet appropriately placed in said building was to be inscribed 'George H. Fancher Memorial Free Library.' The trial court held that the devotion of the funds to this purpose was within the purview of the trust created by the will, and gave judgment accordingly.

"Appellant contends that the will discloses that the testator's intent was that the monument to his memory should take the form of a memorial shaft, column or similar structure marking the grave of the deceased, and that the devotion of any of the funds to the purpose of a library building, or for the erection of any other memorial building, was a use wholly beside the testator's intent. In this, as in all other matters pertaining to the construction of a will, the testator's intent is to be derived from his language, and the words employed are to be given their natural significance, unless it be made to appear that they were employed with some other meaning. Looking to the terms of this will, the testator desired that his remains should be buried upon his ranch, and his request that this should be done has been complied with. He left the fund of $25,000 to be used by his executors for funeral expenses for the proper interment of his remains and for a suitable monument to his memory. There is nothing in this language to indicate that the testator used the word 'monument' in any other than its natural and specific meaning, which is that of 'a pillar, statute, shaft or any structure placed over a tomb or at a grave.' (Standard Dictionary.) In its applied sense, a monument being 'a reminder' may take any form. Napoleon's battles are a monument to his memory. Horace by his poetry 'built himself a monument more enduring than brass,' and Sir Christopher Wren in his oft-quoted epitaph, *"Si monumentum requiris, circumspice,"* declares St. Paul's cathedral to be his monument. Yet, as suggested by the supreme court of Rhode Island in *In re Ogden,* 55 Atl.

933, if one were to say that he had seen Napoleon's or Horace's or Wren's monument, the mind would call up some memorial shaft or column, and not the victories of one, the poetry of another, or the cathedral of which the third was the architect. So it is said in *Society of Cincinnati,* 154 Pa. St. 621, a monument may take the shape of a memorial hall or other building, but that is not the general sense of the word, and will not be presumed to be its meaning. In *In re Ogden, supra,* the testator left to the town of North Providence $5000 'to erect a monument to the memory of the soldiers and sailors who fell or died in the late war, enlisting from this part of the town, and my desire is that the monument be erected at the junction of Olney and Fruit Hill avenues in said town, on a triangular piece of land thereat located.' It was proposed there to use the money for the erection of a memorial building. The court held that such a structure was not permissible, that it was not within the natural meaning of the bequest, and involved a strained and forced construction of the language, saying: 'To ascertain the written expression a court does not look so much to the etymological scope of a word as to its common meaning and particular use. The word "monument" in common usage, when it relates to a memorial for the dead, means a shaft, column, or some structure more imposing than a mere gravestone. If it were said that a monument had been erected to the memory of one who had died, the natural and immediate conception would be that which we have just stated. . . . It may be said that the names and services of soldiers can be as well preserved on the walls of a building as on the sides of a monument. This is true, but would one naturally think that a building was intended by a provision for a monument?' In the case at bar there is nothing to indicate that the testator used the word in any applied or figurative sense, and there is much to indicate that he did not. The juxtaposition of the phrase, the devotion of the single sum of money to the threefold purposes of paying funeral expenses, of proper interment of his remains, and of erecting a suitable monument to his memory, indicate that the monument which he contemplated was one to mark the site of his tomb. He did not design that it should take the form of a charity to be named after him. A public hall, library, hospital, may all be memorials,

and a memorial may be a monument, but, saving in a figurative sense, the converse is not true. By a monument is not understood a memorial building. 'Suitable' as here used gives play to discretion upon the part of the executors in the selection of the monument, its form and style, with reference to the amount of money set apart for the purpose. (*Appeal of Bainbridge*, 97 Pa. St. 482.) In thus deciding as we do that a memorial building is without the purview of the testator's bequest, it is not intended that this discretion so vested in the executors is in any other way limited. The full amount of the fund devoted to the purpose, or such part as they deem fit, may be expended in the erection of a monument to the memory of the deceased. It is held merely that the erection of a public building is not within the intent. of the testator as expressed in his will."

For the aforesaid reasons the judgment is reversed, with directions to the trial court to enter its judgment in accordance with the foregoing.

Lorigan, J., Angellotti, J., and Melvin, J., concurred.

Beatty, C. J., dissented.