Rhode Island Hospital Trust Co., *Executor and Trustee*
*vs.* Francis G. Benedict, *et al.*

MARCH 22, 1918.

Present:  Parkhurst, C. J., Sweetland, Vincent, Baker, and Stearns, JJ.

*(1)  Charitable Trusts.  "Monument."*

Testator bequeathed a fund in trust "to use and expend said trust fund
and its accumulations, if any, in the erection of and to erect upon
some suitable site in " Roger Williams Park," so-called, designated by the
city council of said city, a monument dedicated to and illustrative of
Music, which said monument shall be designed and executed in such
manner as at once to instruct and adorn."

*Held*, that the word "monument" was not used in the restricted sense of a
stone column or pillar, but with a broader and more comprehensive
meaning, and by the use of the word "adorn," and the sum appropriated,
testator intended to materially beautify the principal park of the city,
set apart and resorted to by its people as a place of rest and relaxation,
benefitting the general public by conveying to their hearts and minds
an educational influence.

*(2)  Public Charity.*

*Held*, further, that the bequest created a public charity, for while it did
not fall within the enumeration of the purposes constituting charitable
uses set out in the statute relating to charitable donations, that enumera-
tion was not exhaustive, but where a purpose by analogy is deemed to
be within its spirit and intendment it is held to be "charitable" within
the meaning of the statute.

*(3)  Charitable Trusts.  Uncertainty.*

*Held*, further, that the trust was not void for uncertainty.

Bill in Equity for instructions.

Vincent, J.  ᐧThis is a bill for instructions brought by
the Rhode Island Hospital Trust Company as executor
under the last will and testament of William Curtis Bene-
dict, late of Providence, deceased.  The will has been duly
admitted to probate by the Municipal Court of Providence
and contains two clauses which involve the questions pre-
sented for consideration.

"Nineteenth.  I give and bequeath unto the Rhode
Island Hospital Trust Company the sum of seventy-five
thousand dollars ($75,000), IN TRUST, for the uses and

purposes following, namely, to hold, care for and invest the same, and as soon as may be after my decease, under the advice and direction of a committee to be composed of Stephen O. Metcalf and Stephen O. Edwards, both of said City of Providence, Edward P. Chapin, of said Andover, Massachusetts, one person who shall be appointed by the Executive Committee of the Rhode Island School of Design, and one other person who shall be appointed by the Providence Art Club, to use and expend said trust fund and its accumulations, if any, in the erection of, and to erect upon some suitable site in 'Roger Williams Park' so-called, in the City of Providence, designated by the City Council of said City, a monument dedicated to and illustrative of Music, which said monument shall be designed and executed in such manner as at once to instruct and adorn, and the said Trustee hereunder in all respects following and executing the advice and direction of said committee in the execution of this trust shall be free from all responsibility for the performance of its duties as such Trustee hereunder, and the said committee above named shall have power to fill all vacancies in their number.

"Twentieth.    All the rest, residue and remainder of all the property and estate, real, personal and mixed, wheresoever the same may be situate, of which seized and possessed, or to which entitled, I shall die, I give, devise and bequeath to said Rhode Island Hospital Trust Company, in and upon the same trusts and for the same uses and purposes as set forth in paragraph 'Nineteenth' hereof."

It is claimed by some of the heirs and next of kin of the testator that the gifts made by these two clauses are illegal and void and that the executor ought to so regard them and distribute the said sum of' seventy-five thousand dollars, and also the residue, among the next of kin as intestate property of the decedent.

The complainant executor has not therefore paid over to itself, as trustee, the said sum of seventy-five thousand dollars nor the said residue, but is ready and willing to do

so whenever the validity of these gifts may be properly established and has filed its bill for instructions as to its duty in that regard.

The cause having been certified to this court under the provisions of Section 35 of Chapter 289 of the General Laws of 1909 is now before us for determination.

The next of kin, who are contesting the validity of these provisions of the will, submit to us for our consideration five specific points.

First.    That the word "monument" as used by the testator in the nineteenth clause of his will signifies a stone column, pillar, piece of statuary or an allegorical figure representing music.

Second.    That the trust which the testator attempts to create under the nineteenth clause of his will is not a trust for charitable uses.

Third.    That the trust is void for uncertainty.

Fourth.    That the trust which the testator sought to create was a private trust to which the doctrine of *cy pres* is not applicable such doctrine being only pertinent to trusts solely charitable.

Fifth.    That the trust is in violation of the rule against perpetuities and therefore void.

The respondents claim, in the first place, that the word "monument" appearing in the nineteenth clause of the will was used by the testator in a sense somewhat restricted and that the language of the clause taken as a whole is indicative of an intent to confine the disposition of the bequest to the erection of "a stone column, pillar, piece of statuary or an allegorical figure representing music;" that the word "monument" was not used in the sense of a memorial building, memorial gates or any structure of a similar character; that the provision that the monument is to be "designed and executed" would not apply to a building, auditorium or music hall; and further that the purpose of the monument itself being to "instruct and adorn," a building or memorial where music might be enjoyed, ren-

dered or taught could not have been within the contemplation of the testator.

In support of this argument, apparently intended to be preliminary to and in aid of the further proposition that the trust set forth in said nineteenth clause of the will is not a trust for charitable uses, the respondents cite two cases. *Ogden, Petitioner,* 25 R. I. 373 and *Fancher* v. *Fancher,* 156 Cal. 13.

In the case of *Ogden, Petitioner, supra,* the testator left a sum of money to the town for the erection of a monument to the memory of the soldiers and sailors who had enlisted, fallen or died in the late war. The court held that the word "monument" was used by the testator in its common meaning of a shaft or column to the memory of the dead and that the fund could not be used for a memorial or memorial building. The case of *Fancher* v. *Fancher, supra,* follows the case of *Ogden, Petitioner,* and the cases are substantially alike. In the *Fancher* case the testator set apart twenty-five thousand dollars for funeral expenses, the proper interment of his remains and the erection of a suitable monument to his memory. The court held that the executors after having disposed of the testator's remains and erected a monument to his memory could not use the remainder of the fund in the erection of a public library upon which a tablet was to be placed bearing an appropriate inscription to his memory.

We have no criticism to make upon these two cases. They seem to us to correctly state the law upon the facts presented. In the one case it was clearly the intent of the testator to erect a monument to the memory of those who had enlisted from his native town and had died or had fallen in the civil war, and in the other case it is equally clear that it was the intention of the testator to provide for the erection of a monument to his own memory. There was no attempt in either of these cases to do anything more and in both cases the word "monument" could only be construed as meaning something which should serve to perpetuate the memory of the dead.

In the case at bar the intent of the testator was to secure something different and something more.

Something different because it was not to relate to the dead and was not to be commemorative of the testator. The clauses in question contain no provision requiring or suggesting that the name of the testator should be affixed to the structure either as the donor of the fund or otherwise.

Something more because it was to be illustrative of music and at the same time to be instructive and adorning.

Whether or not the testator succeeded in creating a valid trust we will take up later. We are now discussing his intention with a view to distinguishing the case at bar from the two cases cited by the respondents in which the respective testators evinced the single purpose of erecting a commemorative monument in the one case to dead soldiers and sailors and in the other case to himself. We think that the word "monument" was used by the testator in its broader and more comprehensive sense and therefore it does not seem to us that these cases which the respondents cite have any important bearing upon the consideration of the other questions with which we are to deal.

We are not called upon at this time to determine as to the form or design in which the wish of the testator shall find its particular expression, that is a matter devolving upon a committee to be appointed under the provisions of the will. We are simply asked to say whether the trust which the testator has attempted to create is or is not for a charitable use.

The respondents contend that the trust sought to be created under the nineteenth clause of the will is not for charitable uses and they cite the case of *Kelly* v. *Nichols*, 18 R. I. 62, containing a definition of what constitutes a charitable trust as adopted by this court, and quote therefrom as follows: "We know of no definition of a legal charity more accurate, concise and comprehensive than that given by Mr. Justice GRAY, in *Jackson* v. *Phillips*, 14 Allen, 539, 556; 'A charity, in the legal sense, may be more fully

defined as a gift, to be applied, consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature.' "

Whether the purpose of the testator was wise or unwise is no concern of this court. We are only interested in determining whether the trust attempted to be created is valid or invalid and we must approach the consideration of that question bearing in mind that it has always been the policy of the law to uphold charitable bequests and give effect to them whenever possible.

The intention of the testator is apparent from the terms of his will. He had in mind two purposes: (1) to adorn and beautify a public park; and (2) to develop in the minds of those who might go there for rest and recreation a love of one of the fine arts. The use of the word "instruct" is wholly consistent with an intent to stimulate an interest in music, to further a desire for its better understanding and to lead the people to share in its elevating, refining and ennobling influences, and in so far as it may accomplish those objects the gift is one for educational purposes.

In *Sargent* v. *Cornish*, 54 N. H. 18, 22, a gift to the town of a sum of money, the income from which should be devoted yearly to the purchase and display of United States flags, was upheld as educational, the court saying, "The intention of the testator seems to have been to educate the rising generation of Cornish to patriotic impulses." . . . Educational purposes are "not merely the means of instruction in grammar, or mathematics, or the arts and sciences, but all that series of instruction and discipline which is intended to enlighten the understanding, correct the temper, purify

the heart, elevate the affections, and to inculcate generous and patriotic sentiments, and to form the manners and habits of rising generations, and so fit them for usefulness in their future stations. And the means of education are not solely books and printed rules and maxims, but representations and symbols and pageantry, it may be."

The use of the word "adorn" and the munificent sum appropriated for the purposes described leave no doubt that the testator fully intended to materially beautify the principal park of the city set apart and resorted to by its people as a place of rest and relaxation.

The proposed monument is designed to be an adornment to the park and a benefit to the general public by conveying to their hearts and minds an educational influence.

*In re Graves*, 242 Ill. 23 (1909) where a bequest was made for the establishment of a public drinking-fountain for horses in a park, to be ornamented by a life-size statute of the testator's race horse and to have inscribed thereon the speed of the horse and the testator's name, the court, in discussing the question whether the bequest was charitable and should therefore be exempt from the state inheritance tax, made use of this language: "It is to be located in a conspicuous place in the park, will add to the beauty of the driveway and the grounds surrounding it and render that portion of the park more attractive and pleasing to the public who may view it and thus aid in the fulfillment of the purpose for which parks are established and maintained, which is the pleasure and recreation of the public. . . . It is also proper that they (the park commissioners) should supply ornaments and in other ways beautify and adorn the parks under their control. The funds for this purpose can only be derived from taxation or from charitable bequests such as is here provided for; and thus again it will be seen that this bequest is within the meaning of the definition of charity above given, in that it may reduce taxation and thereby lessen the burdens of government."

It is true that the purpose of the gift was twofold, kindness to animals and the adornment of the park, but the opinion clearly indicates that the court sustained the gift as for a charitable use upon both grounds.

In *Smith's Estate*, 181 Pa. St. 109, a bequest of $500,000, for the erection of a monumental arch in a public park, which should include bronze busts of distinguished Pennsylvanians, the executor, the architect, equestrian statues of generals and a bronze statue of the testator with his name underneath in large letters, was held to be a valid, charitable bequest and the court said in its opinion that the arch contemplated would "tend to the elevation and refinement of the people, cultivate a love for the beautiful in art and architecture, and keep alive their patriotism and remembrance of the martial prowess and good deeds in statesmanship and civil life, of heroes, patriots and citizens worthy of perpetuation. . . . The memorial monument is for the beautifying and adornment of the city, and for these reasons alone the gift would be upheld as charitable."

(2)    We think that the case at bar comes within the definition of a public charity adopted by this court in *Kelly* v. *Nichols*, *supra*. The gift is unselfish and public spirited. Its dignity is in no way impaired by any word or suggestion calculated to glorify or extol the memory of the donor. As was said by the court *In re MacDowell's Will*, 217 N. Y. 454: "Many definitions of a charitable trust have been formulated, but all the definitions that have been attempted carry the implication of public utility in its *purpose*. . . . If the purpose to be attained is personal, private or selfish, it is not a charitable trust. When the purpose accomplished is that of public usefulness unstained by personal, private or selfish considerations, its charitable character insures its validity."

The respondents argue that the contested clauses do not create a charitable use within the clear and natural meaning of the statute 43 Elizabeth, Chapter 4 (1601), nor under the early Rhode Island Colonial Statutes, 1721, in which the

statute of Elizabeth was substantially incorporated.    In the concluding paragraph of the opinion in *Derby, Ex'r* v. *Derby, et al.*, 4 R. I. 414, the history of this statute is traced from the Colonial Act of 1721 to the digest of 1844 where it stands embracing every charitable donation for a specific purpose and substantially the same as the statute of 43 Elizabeth relating to charitable donations.    The statute of Elizabeth referred to enumerates certain purposes which constitute charitable uses and it is true that the case at bar does not come within such enumeration, but this statute has been later interpreted by courts both in England and in this country, including our own court, to be broad enough to cover charitable objects other than those referred to therein. In *Commissioners* v. *Pemsel*, L. R. App. Cas. 531 (1891) the Lord Chancellor said, "Where a purpose by analogy was deemed by the Court of Chancery to be within its spirit and intendment, it was held to be 'charitable' within the meaning of the statute" and that view has been adopted in this State in the case of *Webster* v. *Wiggin*, 19 R. I. 73, when this court said:    "The twenty-one classes of trusts referred to in this statute have been taken by the courts as *criteria* in passing upon the character of trusts claimed to be charitable. But the enumeration of the statute is not exhaustive. . . .    Other trusts with objects quite remote from any known to the subjects of Queen Elizabeth have been sustained as analogous, or upon general principles have been deduced from that statute by broad generalization."

(3)    The respondents argue that the trust is void for uncertainty;  that even admitting that the monument will serve to bring the minds of the public under educational influences the testator has not, in the portions of his will under consideration, specified the branch of education which he intended should be advanced and developed by means of the trust which he has attempted to create; that the sole purpose of the gift is to glorify music or personify it as a deity and, although it might be capable of exercising some educational influence upon the mind and heart, the

private desire of the testator could not thereby be converted into a public benefit. In this connection the respondents cite the case of *Mason* v. *Perry*, 22 R. I. 475, in which this court said: "It is well settled that in order to create a valid charitable trust in perpetuity the language employed must require the fund to be expended for charitable purposes only. And it must not be left in the discretion of the trustee to spend money for a charitable or a non-charitable purpose. In other words, the devotion of the fund to charity must be clear and certain."

While we have no criticism to make upon the law as thus expressed we fail to see how it is advantageous to the respondents. "It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature." 5 R. C. L. 294. When the testator provided for a monument to music which should be instructive he must be presumed to have had in mind some instruction connected with music, if not the direct teaching of the art, at least the development of a love for it and a desire to obtain the benefit of its influences. This seems to us to have been the purpose of the gift rather than the more vague, imaginative and romantic intent for which the respondents contend.

The respondents have cited a number of cases where trusts have been declared void for uncertainty. We think that they are easily distinguished from the case at bar. We shall not undertake to consider them seriately. They are all similar in principle and particular reference to one or two of them by way of illustration will suffice. In *Attorney General* v. *Soule*, 28 Mich. 153, the will contained a bequest "for the establishment of a school at Montrose aforesaid, for the education of children, to be expended according to the direction of my said executors." The court held that the trustees were not bound to apply the fund to a public charity; that they were vested with a sufficiently broad authority to apply the fund to a private school or to a school of an exclusive character which they might erect and which would be in no sense public.

In *White* v. *University*, 4 Iredell Eq., 19, the will provided for the sale of certain land of the testator and "the proceeds laid out in building convenient places of worship, free for the use of all Christians, who acknowledged the divinity of Christ and the necessity of a spiritual regeneration" and the court held that the gift was void for uncertainty, saying: "But the difficulty in this case arises from two circumstances; the one, that the will is silent as to the places where the churches are to be erected; and the other, that there is no ownership conferred on any religious congregation, nor any trustees for it; nor can there be, since, from the nature of the charity, it appears to have been the purpose of the testator, that no congregation of any particular portion or sect of the Christian church should be formed at his churches, as he makes them free for all such as hold two doctrines of Christianity. Now, it seems impossible for a Court to hold, that a charity for religion is sufficiently specific, in which no part of the Christian world has any property, legal or equitable; which no one has a right to manage or preserve, and in which the Court would, perhaps, be daily called on to regulate the uses of the buildings, which the various sects would endeavor to concentrate, each one in itself."

We do not think that the provisions of the will in the case at bar present any such uncertainty as the cases cited by the respondents exemplify and we cannot say that they are void for uncertainty. We think that the intention of the testator is clear and capable of being carried out by the trustee under the directions contained in the will.

The respondents claim that the doctrine of *cy pres* cannot be applied to the present case. They make this claim, however, upon the assumption that the trust which the testator has attempted to create is a private and not a public trust. As we have come to a different conclusion regarding the nature and character of the trust in question the doctrine of *cy pres* need not be discussed.

It is conceded that the rule against perpetuities does not affect a public or charitable use and therefore nothing remains for discussion upon that point.   We think that the trusts created by the nineteenth and twentieth clauses of the will of William Curtis Benedict are valid; that the complainant ought to pay over to itself, as trustee, the said legacy of seventy-five thousand dollars and the residuary property of said testator;  and thereupon proceed to discharge its duties as such trustee under and according to the terms of said will.

The parties may present to this court a form of decree in accordance with this opinion.

*James C. Collins, Zechariah Chafee, Jr., Tillinghast & Collins,* for complainant.

*Mumford, Huddy & Emerson,* for respondents.