[L. A. No. 6186. Department Two.—November 15, 1919.]

In the Matter of the Estate of HENRY F. SPENCER, Deceased. CHARLES J. ADAMS et al., Appellants, v. HENRY SMITH et al., Respondents.

[1] ESTATES OF DECEASED PERSONS—WILL—BEQUESTS TO PERSONS AND CORPORATIONS—RESIDUE TO "PERSONAL" LEGATEES—MEANING OF TERM—EVIDENCE INADMISSIBLE.—Where a testator, after directing the payment of debts and making the bequest of a watch, provides for the disposition of the remainder of his property in twenty-six numbered clauses, the first fifteen of which were legacies to persons and the next nine to religious, educational, and eleemosynary societies or corporations, and in the final clause gave one-half of the residue to the "personal legatees named in the foregoing clauses of this my will from and including one to and including fifteen," interpretative testimony was inadmissible to show that the word "personal" was not used to differentiate the persons named from the corporations, but to distinguish personal friends from collateral relations.

[2] ID.—EVIDENCE—ORAL DECLARATION OF TESTATOR.—Evidence of an oral declaration of a testator at variance with the express language of his will is not admissible to show that the scrivener who prepared the testament and the testator had used a well-understood word with a meaning not attributed to it generally by users of the English language.

APPEAL from an order of partial distribution of the Superior Court of Santa Barbara County. S. E. Crow, Judge. Affirmed.

The facts are stated in the opinion of the court.

Alexander Heynemann for Appellants.

Jefferson P. Chandler for Respondents.

Richards, Heaney & Price for Executors.

MELVIN, J.—This is an appeal from an order of partial distribution in the estate of Henry F. Spencer, deceased, by certain legatees under the will.

The whole controversy centers around the intended meaning of the word "personal" as inserted by testator's order in the will after the reading of the first typewritten draft, and the substitution of the number "15" for the number "26."

The will after two paragraphs, one directing the payment of debts and the other bequeathing a certain watch to a friend, provides for the disposition of the remainder of the property in twenty-six numbered "clauses" and preliminary to these clauses is the direction that those from and including one to and including fifteen shall be paid in full even if any deficiency must be made good by abatement or cancellation of legacies from and including sixteen to and including twenty-four. These latter are all legacies to religious, educational, and eleemosynary societies or corporations, while the first fifteen are to persons. It is evident, therefore, that the mind of the testator was directed to the two general classes of bequests, namely, one to personal and another to artificial entities. It is to be noted, further, that by the first "clause" bequests are made to Henry Spencer Smith and Lucia W. Smith, children of a deceased sister. Small bequests are also made therein to three sons of Bradford Smith "in token of remembrance," but it does not appear whether or not said Bradford Smith was related to the sister of the testator. In the "clause" numbered two a bequest is made to Lucy A. Weed, testator's sister. Clause twenty-five contains a bequest to a religious news-

paper. The final provision, number twenty-six, so far as pertinent to this discussion is as follows:

"All the rest, residue and remainder of my estate, real, personal and mixed, which I may own or possess at the time of my death, or may in any way be entitled to, and all rights in action as well as in possession, I give, devise and bequeath in the manner following, to wit:

"To Henry Spencer Smith and Lucia W. Stimson, hereinbefore mentioned as Lucia W. Smith, one-eighth part each, and one-fourth part I give, devise and bequeath to my sister, Lucy A. Weed, and the remaining one-half part to the personal legatees named in the foregoing clauses of this my will from and including one to and including fifteen in proportion to each of said legatees as the amount of his or her legacy bears to the total amount of the legacies bequeathed."

The will was a typewritten document, except that the word "personal," before the word "legatees," was written in ink, and the number "26" following the word "including" had been stricken out and the number "15" had been written above it in ink. Both changes were attested by the initials of the witnesses to the will and there is no contention but that they were regularly made at testator's request. But the statement is made that the word "personal" was not used to differentiate the *people,* to whom various sums were bequeathed, from the societies and corporations, but to distinguish *personal friends* from *collateral relations.* To state this contention is almost to answer it. If the meaning for which appellants contend could be attributed to the word "personal" then there would be no necessity for including clauses one and two, wherein the collateral kinsfolk are made beneficiaries. Yet the words "from and including one to and including fifteen" are used. This language is entirely in accord with the usual meaning of the word "personal" because clause fifteen marks the end of the series of bequests to *persons.* All those following are to organizations, not to persons. [1] There is no ambiguity in the language and, therefore, no reason for interpretative testimony. We know of no use of the word "personal," either technical or colloquial, which would justify its employment in distinguishing those not related from those who are.

Appellants insist that the testator could not possibly have intended to give to Henry Spencer Smith, Lucia W. Stimson and Lucy A. Weed each *three* portions of the property, namely, a legacy of a definite amount of money, a certain fraction of the residue and a further sum to be computed according to the rules of proportion. But why not? He intended *two* portions for each stranger to the blood. Is it remarkable that he favored his sister, his nephew and his niece above those not of his family? These favored ones were the only relatives specified in the will, unless Bradford Smith's sons (to whom small sums "in token of remembrance" were given) were grandnephews, which does not appear, and even if it did their legacies were so small as to indicate that testator did not consider them peculiar objects of his bounty. It is true that there were legacies of two thousand five hundred dollars each to Charles J. and Arthur A. Adams, described as "my nephews," but it was admitted that they were nephews of testator's predeceased wife. There is nothing remarkable, therefore, in the fact that his favored relatives, his sister Lucy (to whom there was a direct bequest of seven thousand five hundred dollars in her own right), his niece Lucia and his nephew Henry (bequeathed respectively seven thousand dollars and ten thousand dollars) should also share twice in the residue.

Henry F. Spencer was blind when the will was executed in January, 1916. The scrivener who prepared the testament was Mr. Jarrett T. Richards, an attorney at law. At the time of the hearing in the probate court he was too ill and infirm to attend and appellants sought to introduce his deposition for the purpose of showing what occurred at the time of the emendations of the text of the will. This deposition was properly excluded for the reason that the plain terms of the instrument required no exposition. Words of a will are to be taken in their ordinary and usual meaning. (Civ. Code, sec. 1324; *Fancher* v. *Fancher*, 156 Cal. 13, [19 Ann. Cas. 1157, 23 L. R. A. (N. S.) 944, 103 Pac. 206]; *Estate of Purcell*, 167 Cal. 176, [138 Pac. 704]; *Garner* v. *Purcell*, 173 Cal. 495, [160 Pac. 682].) Resort may be had to evidence of the facts or circumstances surrounding the execution of the will when the language is ambiguous or doubtful. (Civ. Code, sec. 1318, which, it is to be noted, excludes a testator's oral declarations; Civ. Code, sec. 1340;

*Estate of Murphy,* 157 Cal 63, [137 Am. St. Rep. 110, 106 Pac. 230].) But we are bound by the terms of the will as written (*Estate of Rounds,* 180 Cal. 386, [181 Pac. 638]), when they are clear. The purport of the testimony in the deposition (elicited largely by leading questions which were none the less suggestive because "owing to the advanced age of the witness" counsel sought to draw his attention to certain "salient facts") was that witness told the testator that by the expression "personal legatees" he would be indicating "those personal legatees in contradistinction to collateral"; and that "people other than Henry Spencer Smith, Lucia W. Stimson and Lucy A. Weed" were to receive half of the residue. This advice was given, said witness, after testator had declared that he did not want his relatives to share ratably with the other legatees in one-half of the residue described in clause twenty-six. [2] If such testimony had been introduced its tendency would have been not to clarify the terms of the testament but to show that Mr. Richards and the testator had used a well-understood word with a meaning not attributed to it generally by users of the English language. Moreover, the very essence of the testimony offered and rejected, indeed, its only material part, was an oral declaration of the testator at variance with the express language of the will. Such declarations must be excluded. (Civ. Code, secs. 1318, 1340.)

The judgment is affirmed.

Wilbur, J., and Lennon, J., concurred.