INDUSTRIAL TRUST COMPANY, *Tr. vs.* FRANCIS C.
LATHROP, JR. *et al.*

JULY 9, 1946.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. This is a bill in equity for the construction of the will of John Champlin, late of the town of Westerly, deceased. The cause was heard in the superior court for

the county of Washington on bill, answers and oral proof, and when it was ready for hearing for final decree it was certified to this court for our determination in accordance with general laws 1938, chapter 545, §7.

The complainant is the sole executor and trustee under the will. The respondents, who are all the parties in interest, are Frida Moehl Champlin, widow of the testator, and Francis C. Lathrop, Jr. and John Champlin Lathrop, both minors when this cause was brought, children of testator's deceased daughter, Elizabeth Champlin Lathrop. These grandchildren of the testator are represented by a guardian *ad litem.*

John Champlin, a resident of the town of Westerly, died on November 27, 1938, leaving a will, dated January 27, 1936, which was duly admitted to probate by the probate court of that town. The testator was married twice. By his first wife, he had two children, a daughter, Elizabeth Champlin Lathrop, and a son, John Champlin, Jr. The son predeceased the testator, dying on May 2, 1938, without issue but left an adopted child, Robert McDonald, so named in paragraph fifth of the will before us. The daughter survived the testator but died July 24, 1944, leaving two children, who are the minors named as respondents in the instant cause. The other respondent, Frida Moehl Champlin, is the testator's second wife and by her he had no issue.

The only provisions of the will which are in question in this cause are paragraphs twelfth and fourteenth, hereinafter referred to as paragraphs 12 and 14 for convenience, in which the residuary estate of the testator is given to the complainant in trust. Paragraph 12 directs the trustee to pay from the net income:

"(1) The sum of Four Hundred ($400.) dollars to my wife, the said Frida Moehl Champlin, quarterly, for and during the term of her life, and so long as shall remain my widow.

"(2) The sum of Six Hundred ($600.) dollars, to be divided equally between my son John Champlin, Jr.,

my daughter Elizabeth Champlin Lathrop, and any child or children which may be born to me and my said wife Frida Moehl Champlin, living at the time of my decease, share and share alike, to be paid to them and each of them quarterly, for and during the term of their respective lives."

Paragraph 14 is as follows:

"Upon the death of my wife, or upon her re-marriage, I direct my said Trustee to pay the whole of said net income of the trust created in paragraph 'Twelfth' hereof, to my son John Champlin, Jr., and my daughter Elizabeth Champlin Lathrop, and any child or children born to me and my said wife Frida Moehl Champlin, then living, to be divided between them share and share alike, to be paid to them quarterly for and during the term of their respective lives; and upon the death of my said son John Champlin, Jr., his share of the income therefrom shall go to the heirs of his body, should such survive him, to be paid to them quarterly until the youngest of such issue of his body shall have reached the age of twenty-one (21) years, at which time I direct that the proportionate part of the principal of said trust estate set aside for the benefit of my said son, John Champlin, Jr., as measured by the number of children surviving me or surviving my said wife or living in the event of her re-marriage, shall go to the living issue of the said John Champlin, Jr., should such issue of his body survive him, to be theirs absolutely and forever, and freed and discharged of said trust. In case my said son John Champlin, Jr., die without living issue, then and in that case I direct that his share of said net income be divided equally between my said daughter Elizabeth Champlin Lathrop and any child or children issue of my present marriage then living, for and during the term of their respective lives, in the manner provided above. Upon the death of my said daughter Elizabeth Champlin Lathrop her share of said net income shall go to the heirs of her body, should such survive her, until the youngest of said heirs of her body shall have reached the age of twenty-one (21) years, at which time I direct the share of said Elizabeth Champlin Lathrop in the principal of said trust estate

as measured by the number of my children sharing in said trust, be divided equally between the heirs of her body, or the heirs at law of such children, to be theirs absolutely and forever. And I further direct that in case my daughter Elizabeth Champlin Lathrop should die without leaving issue living, then and in that case I direct that the income from her share of said trust estate be paid to my children then living, to be divided equally between them, share and share alike, for and during the term of their respective lives, to be paid to them quarterly, and upon the death of my last surviving child, I direct that the remainder of said trust estate be paid and turned over to the heirs of said last surviving child, to be theirs absolutely and forever, free of said trust."

The testimony shows that the respondents Francis C. Lathrop, Jr. and John Champlin Lathrop are now twenty-one and eighteen years old respectively. The age of the only other respondent, Frida Moehl Champlin, testator's widow, is given as about forty-five years. The testimony further shows that the income of the estate, especially in recent years, has been more than adequate to produce the amount payable by the trustee under paragraph 12, so that, on December 31, 1944, there was an undistributed balance of accumulated excess income in the hands of the trustee. The trustee has made the quarterly payments to the widow regularly and to the testator's daughter, Elizabeth Champlin Lathrop, up to the time of her death, July 24, 1944. It has made no payments to the latter's children, the respondents Francis C. Lathrop, Jr. and John Champlin Lathrop, since the death of their mother.

Testator's grandchildren contend that they are entitled to the payment of the income which their mother, if living, would have received under paragraph 12; that, because they or their heirs are entitled to the *corpus* of testator's residuary estate upon the termination of the trust under paragraph 14, they should receive the current income in excess of the amount required for the quarterly payment of $400

to the widow; and, further, for the same reason, that they are entitled to the excess income heretofore accumulated and not needed for payments to the widow and to their mother from the death of the testator to the death of their mother.

In her argument before us the widow seemed to concede that the testator's grandchildren are entitled to the quarterly payments of income provided for their deceased mother in paragraph 12, but she expressed no opinion as to the disposition of the accumulated income. The only contention which she makes in her brief is that since the will does not provide in paragraph 14 for "the distribution of the trust fund in its *entirety*" upon the termination of the trust, "the trust estate therefore would become intestate property and then be distributed in accordance with the laws of distribution of the State of Rhode Island." (italics ours) We infer from this contention that she takes the position that the testator's grandchildren are not entitled to the accumulated income and that such income should be added to the principal of the trust estate, which is ultimately to be distributed in its entirety as intestate property.

None of the basic contingencies which would terminate the trust has happened. Neither the death nor remarriage of the widow has occurred; nor has the youngest grandchild of the testator arrived at the age of twenty-one years. Nevertheless, in view of the fact that both the widow and the grandchildren, who were the only persons who could possibly have any interest in the *corpus* of the trust estate upon its termination, have made the question of testator's testacy or intestacy as to his residuary estate an important element in their respective contentions on the immediate questions now before us, we will first consider such question.

The cardinal rule of testamentary construction is to ascertain testator's dominant intent from the whole will and then to give effect thereto, unless it be contrary to some established rule of law. We are required to determine this ques-

tion of fact from what the testator has expressly or impliedly stated in his will, irrespective of outside consideration that might lead to a more practical or beneficial result to those in interest at a time when the testator no longer can speak for himself. The controlling question therefore in the instant case is primarily one of fact, namely, what is the testator's intention as to the payment of income and as to the distribution of the principal of his residuary estate upon the termination of the trust in accordance with the terms of the will?

In construing the will before us we start with our well-known rule that the court will construe a will so as to avoid partial intestacy, if such construction appears reasonable and natural. *Tirocchi* v. *Tirocchi*, 67 R. I. 71, 79; *Industrial Trust Co.* v. *Saunders*, 71 R. I. 94. When this will is fairly read as a whole, the testator's pervading and dominant intent seems to be that the *corpus* of his entire estate, whether or not in trust, should go solely to his children, or to the survivor thereof, and to the *living issue* of any such child or children. Whatever contingencies he provided for refer mainly to the matter of income and do not in any way affect his dominant intent that his entire estate, irrespective of the form in which it was left by him, should be distributed at the proper time only among those of his blood who qualified as his child or children, and to his, her or their *living issue*. It is clear from the language and provisions of the will that he did not intend that any part of his estate, which of course included the residuary estate in trust, should go to his widow or to any other person who did not come within the classes just above described.

The testator first made what he deemed ample provision for his widow for life, provided that she did not remarry. This limitation is in itself a strong indication, when read in connection with all his other dispositions in the will, that he did not want her to receive absolutely any part of his estate, residuary or otherwise, when the time came for its final distribution. In paragraph 2 of the will he gave her

the life use and the net income from his real estate at 3 Granite street in the town of Westerly, and in paragraph 12 he gave her the quarterly annuity of $400 for life or for as long as she remained his widow. With the exception of the provision in paragraph 11, which gives her absolutely as much of the furniture as she deemed necessary in the house numbered 9 Granite street, Westerly, there is not a word in the entire will that gives her any right in the distribution of the *corpus* of his estate, whether in trust or not.

The situation is entirely different with reference to testator's children, or the survivor thereof, and to the living issue of such child or children. Subject to the contingencies and limitations mentioned or necessarily implied, he gave them all the income from his estate not otherwise disposed of and he also gave them "absolutely and forever" the *corpus* of his entire estate, either by direct devise and bequest, or at the termination of the trust. The testator's intention as to the immediate and ultimate distribution of his estate is unmistakably seen when paragraphs 2, 4, 14 and 15 of the will are read with reference to each other.

In paragraph 2 of the will, after the testator gave his widow a conditional life estate in the property at 3 Granite street, Westerly, and a conditional right to the net income therefrom, he directed that upon her decease or remarriage "leaving children issue of our marriage" the net income from that property was to be paid to such issue; if she left "no child or children issue of our marriage" the property and the net income was to go for life to his son, John Champlin, Jr.; and upon the son's death "to the heirs of his body, absolutely, should such survive him"; if the son was not survived "by heirs of his body", then the net income was to be paid for life to his daughter, Elizabeth Champlin Lathrop, if living, and at her death the property was to go to the "heirs of her body, absolutely"; and if she, as his last surviving child, should die without living issue, then to her heirs "to be theirs absolutely and forever."

In paragraph 4 the testator gave his daughter a life es-

tate in all his property in East Whitehill Township, Pennsylvania, together with the income therefrom, with remainder in fee to her children. He further gave his daughter the power to sell that property and "use the proceeds thereof for her own benefit and that of her family", if she deemed it necessary at any time to make such sale.

By paragraph 14, which we have hereinbefore quoted in full, the testator clearly intended that, subject to the contingencies therein specified, the entire *corpus* of his residuary estate in trust should ultimately go to his last surviving child or to the living issue of such child. In essence, he directed the same distribution of his residuary estate upon the termination of the trust that he did in paragraph 2 of the will with reference to the property at 3 Granite street We will refer to paragraph 15 later in this opinion.

The widow's claim of intestacy respecting the *corpus* of the trust estate assumes that the testator, in using the word "share" in paragraph 14, intended that the *corpus* of that estate be divided into equal parts among his children, and that each child was to receive one of those parts at the expiration of the trust. Relying on this assumption and apparently excluding from consideration all other parts of the will for evidence of the testator's real intention, she then argues that, because the testator failed to provide in express terms in paragraph 14 for the distribution of John's share of the trust estate, therefore it would become intestate property and would then be distributed in accordance with the laws of distribution of the state of Rhode Island.

We find this contention without merit for various reasons. First, it completely disregards the directions of the testator in paragraph 14 as to the manner in which the principal should be allocated for distribution; second, it would give the widow an interest in the *corpus* of the estate, whether she remarried or not, which is clearly against the positive and express intention of the testator; third, it would give Robert McDonald, the adopted child of testator's son, an interest in the estate—G. L. 1938, Chap. 420, §6—which

again is in direct conflict with testator's intention respecting the distribution of his estate. In this connection we note that by paragraph 5 of the will the testator bequeathed the sum of $500 to Robert McDonald, thereby further indicating an intention that he should receive no other portion of the estate. See *Union Trust Co.* v. *Campi,* 51 R. I. 76.

There can be no question as to testator's intention respecting the disposition of the principal of the trust estate if paragraph 14 is examined with care. After disposing of the *whole* of the net income of the trust when and as specified in that paragraph, the testator directs that the proportionate part of the *principal* of said trust estate set aside for the benefit of his son, John Champlin, Jr., *"as measured by the number of children surviving me or surviving my said wife or living in the event of her remarriage,* shall go to the living issue of the said John Champlin, Jr., should such issue of his body survive him, to be theirs absolutely and forever, and freed and discharged of said trust." (italics ours) The testator uses language substantially to the same effect with reference to his daughter when, in that same paragraph, he says: "I direct the share of said Elizabeth Champlin Lathrop in the *principal* of said trust estate *as measured by the number of my children sharing in said trust,* be divided equally between the heirs of her body, or the heirs at law of such children, to be theirs absolutely and forever." (italics ours) It is clear to us that in using such language the testator prescribed a formula of his own for the ultimate distribution of the principal of the trust estate.

When the testator's language in paragraph 14 that we have italicized is applied to the undisputed facts in this case, there is no ground for any claim of intestacy. No rights of a posthumous child are involved. The testator had two children by his first marriage, his son John and his daughter Elizabeth, and no child by his second marriage. John, who was childless, predeceased the testator. Elizabeth, who survived him, had two children, the respondents Francis C. Lathrop, Jr. and John Champlin Lathrop. At the time of

testator's death, therefore, the proportionate part of the principal of the trust estate which was to have been set up for his son John was clearly directed to go to his only surviving child, Elizabeth. Under such circumstances Elizabeth's share, as measured by the testator's formula, was equal to the entire principal of the trust estate. Her two children, Francis C. Lathrop, Jr. and John Champlin Lathrop, then took a vested interest in remainder in that principal as the heirs of the body of testator's last surviving child, subject to being divested under conditions which have not happened. *Butler* v. *Butler,* 40 R. I. 425.

The widow's contention of intestacy is further denied when paragraph 15 of the will is taken into consideration. In this paragraph the testator directs that the principal of the trust estate shall be distributed among his heirs at law only if his son or his daughter died without issue and there were no children of his second marriage. Bearing this in mind with the other provisions of paragraph 14, it is clear to us that the testator intended to give the principal of the trust estate to the issue, if any, of his son and daughter.

For the reasons stated, we are of the opinion that the testator did not die intestate as to any portion of the trust estate.

The next question in this cause is: Are the respondents, Francis C. Lathrop, Jr. and John Champlin Lathrop, as children of Elizabeth Champlin Lathrop, deceased, entitled to the payments of income to which their mother would have been entitled, if living? This question arises from the fact that clause (2) of paragraph 12 provided for the payment of $600 quarterly to testator's children, but made no provision for the disposition of that sum after the death of any child and before the death or remarriage of the widow.

Ordinarily a simple annuity ceases with the life of the annuitant, but here again the ultimate test is that of testator's intention. In our opinion the will in this cause does not indicate that it was the testator's intention to have the income, in the amounts specified in clause (2) of paragraph 12, added

to the principal of the trust estate in the event of the death of one of the annuitants. In fact, his direction in paragraph 14 respecting the disposition of the *whole* income only upon the death or remarriage of the widow, indicates to us that, upon the death of his daughter, Elizabeth, he intended to have the annuity to which she was entitled, if living, paid to her living issue.

Furthermore, as we have already stated, the respondents Francis C. Lathrop, Jr. and John Champlin Lathrop have a vested interest in remainder in the principal of the trust estate. It is generally held that income arising from a vested interest, even though the full enjoyment of such interest may be postponed to await the happening of some contingency, is, in the absence of limitation in the will, payable to the vested remaindermen as such income accrues. *Butler* v. *Butler, supra; Rhode Island Hospital Trust Co.* v. *Proprietors of Swan Point Cemetery,* 62 R. I. 83, 99. Applying this principle, in so far as applicable to the intention of the testator as found by us in his will, our answer to the question under consideration is in the affirmative.

The next two questions involve the same point. They are: First, are the respondents, Francis C. Lathrop, Jr. and John Champlin Lathrop, entitled to be paid the current income in excess of the amounts required for the quarterly payments under either clause (1) or both clauses (1) and (2) of paragraph 12; and, second, are said respondents entitled to the excess income heretofore accumulated and not needed for payments to Frida Moehl Champlin and Elizabeth Champlin Lathrop during the period from the death of the testator to the death of the said Elizabeth Champlin Lathrop?

The answers to these questions again require us to determine the intention of the testator with reference to the disposition of current excess income and of accumulated income. We are aware that ordinarily a construction which requires income to be accumulated and added to principal or held will not be given to a will, and that in the absence of language indicating such an intent of a testator none

usually will be inferred. *Rhode Island Hospital Trust Co.* v. *Proprietors of Swan Point Cemetery, supra,* at page 99.

The above-mentioned respondents, relying on *Butler* v. *Butler, supra,* contend that, since they or their heirs at law are entitled to the principal of the trust estate at the termination of the trust, all excess income and also accumulated income should be paid to them. We applied the theory of the *Butler* case, in so far as applicable in the circumstances of this case, in answering the preceding question respecting the payment of their mother's annuity to them, and we would apply the same theory in answering the questions under consideration if we were not satisfied that the testator manifested a contrary intention in his will with reference thereto.

Upon careful examination of the pertinent language in paragraphs 12 and 14 of the will, we are convinced that the testator clearly intended, first, that the annuities specified in paragraph 12 should be paid promptly and without interruption during the life of the trust in accordance with the provisions of the will; and, secondly, as provided expressly in paragraph 14, that the *whole* of the net income should be distributed *only* if the widow died or remarried. In our judgment he plainly directed that excess income should be retained by the trustee until either of such contingencies occurred in order to protect the principal of the trust against unforeseen eventualities which might impair the income therefrom and thus jeopardize the orderly payment of the annuities as directed by him. We find that the manifest intention of the testator was that excess and accumulated income should be added to the principal of the trust until the death or remarriage of the widow. Our answer to each of the last two questions under consideration is therefore in the negative.

The parties may present to this court a form of decree, in accordance with this opinion, to be entered in the superior court.

*Stuart H. Tucker, Hinckley, Allen, Tillinghast & Wheeler,* for complainant.

*Herbert W. Rathbun, Harold B. Soloveitzik, Joseph R. Murray,* for respondents Lathrop.

*Tillinghast, Morrissey & Flynn, M. Walter Flynn,* for respondent Champlin.