PHEBE A. B. SMITH *et al. vs.* WILLIAM E. POWERS *et al.*

NOVEMBER 10, 1955.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

416

CAPOTOSTO, J. This cause is before us on a certification, under general laws 1938, chapter 545, §6, of certain questions of law concerning the construction of a portion of the

will of Orlando R. Smith, late of the town of Westerly in this state, deceased.

The complainants are the trustees under the will and certain heirs of the testator. The respondents are William E. Powers in his capacity as attorney general of this state, the Washington Trust Company of Westerly as the succeeding trustee named in the will, and certain other heirs. Infants, persons not in being, and individuals in the military service are duly represented. When the cause was ready for hearing on its merits, the following questions were certified to this court for determination in view of the allegations in the answer of the attorney general:

"(1) Does said will create a Charitable Trust?

(2) Does said will in paragraph marked 'Fourth' authorize and empower the Trustees to sell and convey the premises set forth in the Bill of Complaint free and clear of any trust?"

The bill of complaint is rather unusual and complex in the relief which it seeks. Among other things it prays that the trustees' account annexed to the bill be approved and the trust estate be charged with the balance due them as shown therein; that it be decreed that the trust has failed; that certain specifically described real estate in the trust be sold; that the dower interest of Phebe A. B. Smith, widow of the testator and one of the trustees under the will, be ascertained and paid to her; and that the net proceeds, if any, from the sale of such real estate, which was the only property remaining in the trust, be distributed among the testator's heirs at law.

In view of the pleadings, it is manifest that to determine such complexity of issues the trial justice would necessarily be required to rule on the fundamental question whether the will created a private or a charitable trust. Ordinarily that question is brought to this court by a bill seeking solely the construction of a will or a given part thereof as provided in G. L. 1938, chap. 545, §7. However, in the special cir-

cumstances we will entertain the certification under §6 of that chapter, because it is clear that the above-mentioned basic question is doubtful, important, raised on the record, and requires a ruling thereon by the trial justice before the many other contested issues can reasonably be determined. *Rhode Island Hospital Trust Co.* v. *Davis,* 68 R. I. 461, 463, 464, and cases cited.

In so far as pertinent the undisputed facts in substance are as follows. Orlando R. Smith died November 20, 1932, testate, and without surviving issue. His will, which he executed on January 26, 1932, was probated December 20, 1932. Phebe A. B. Smith and Arthur S. Barber were duly appointed executors. They were also named in the will as trustees of the residuary estate. A final account as executors showing no balance was filed by them in June 1934 and was subsequently approved by the probate court of Westerly. At the time of his death the testator owned and occupied the "Joshua Babcock House," so called, which was built in 1734 and allegedly is still in a "fine state of preservation." The widow, Phebe A. B. Smith, has continued to occupy that house as her home since the testator's death.

The premises in question are described in the agreed statement of facts as "located on a two and one-half (2½) acre parcel of land bordering 370 feet on Granite Street in the village of Westerly, R. I. The 'Joshua Babcock House' is located about twenty-five (25) feet from said street and in the southwesterly portion of said parcel. There is, also, a small one-family house located about fifty (50) feet north of said 'Joshua Babcock House' on the same street, together with a large garage and other small buildings." It is undisputed that the one-family house just mentioned is of modern construction and rented. It further appears that there is no personal property in the trust estate; that the only income in connection therewith is the rent from the small house, which income is "grossly insufficient to pay

taxes, repairs, etc."; and that the widow has advanced large sums of her personal funds in preserving the property.

A description by metes and bounds of the above-mentioned two and one-half acres of land appears in the bill of complaint and in the copies of two deeds attached thereto as exhibits, reference to which is hereby made for a more particular identification of the premises under consideration. The bill and the deeds show that such property was acquired by the testator at different times as two distinct, although adjoining, tracts of land. Parcel 1 is known as 122 Granite street, and parcel 2, on which the Joshua Babcock House is located, is numbered 124 on that street.

The certified questions involve the interpretation of the second and third paragraphs of the will which read as follows:

"Second: I give and bequeath to my wife, Phebe A. B. Smith, such of my household furniture, books, and personal belongings as she may select.

Third: All the rest, residue, and remainder of my estate, real, personal, or mixed, of whatsoever nature, to which I may be in any manner entitled at the date of my death I give, devise, and bequeath to my wife, Phebe A. B. Smith, and to her brother, Arthur S. Barber, of Providence, Rhode Island, In Trust, nevertheless, for the following uses, purposes, and trusts:—To pay the income therefrom in quarterly instalments to my said wife, Phebe A. B. Smith, during her lifetime, and upon her decease to distribute the principal of said estate as follows:—

(a) All the rest and residue of the trust estate, including my real estate, at numbers 122 and 124 Granite Street in the Town of Westerly, with the land both north and south of the same, to the Washington Trust Company, a corporation located in Westerly, and its successors, the real property with the antique furniture and equipment therein to be retained intact and maintained as a memorial and as an example of Colonial architecture and furnishings, to be open to the public

for inspection at suitable times and hours, but said property shall not be used as headquarters or a meeting place for any society or organization. It shall not be used as a residence, except the north portion which shall be available for quarters of caretakers. The income from the personal estate producing income, or so much thereof as may be needed therefor, shall be used to maintain the said estate and the antique furniture and equipment in the buildings thereon. In the event the building at number 124 Granite Street known as the 'Joshua Babcock House', shall be destroyed by fire or the elements or partially destroyed so as to render the premises wholly unfit for occupancy and if they shall be so badly injured that they cannot be repaired without exhausting a substantial portion of the income heretofore referred to, said land shall be cleared of the remains of buildings and be laid out as a park for the use and enjoyment of the public under suitable restrictions, the remainder, if any of the personal estate to be reduced to cash and the income therefrom to be used for the maintenance of said land as a park."

The respective contentions advanced by the complainants and the attorney general are in serious conflict. The Washington Trust Company takes a neutral position. In general complainants contend that the above-quoted provisions of paragraph Third are too uncertain and indefinite to create a charitable trust; that at most the testator intended to establish a private memorial for purely personal reasons; and that a devise of real property for such purpose was invalid because of the rule against perpetuities. In contrast with the foregoing contention, the attorney general urges that the intention of the testator was to devote to certain well-recognized public uses the property specifically described in the bill and denominated in the agreed statement of facts as two and one-half acres of land; that his purpose was twofold: first, to preserve the Joshua Babcock House not only as a memorial to a prominent citizen of Rhode Island in the early history of this state, with whom the tes-

tator was in no way connected by descent or otherwise, but also to conserve that house as an outstanding example of Colonial architecture and furnishings for the educational benefit of the people; and secondly, that in case the house were destroyed or damaged beyond repair to clear the land and maintain it "as a park" for the welfare of the public.

As above stated the Washington Trust Company, which is named as sole trustee upon the death of the testator's widow, takes a neutral position. In the seventh paragraph of the bill of complaint it is alleged that, upon request, the Washington Trust Company had declined to take over the property and maintain it "as a memorial and as an example of Colonial architecture" because there were no funds or sufficient income for that purpose. The answer of the bank left the complainants to their proof with the exception of the allegations in the seventh paragraph. As to those allegations, its answer stated that under the will of Orlando R. Smith the Washington Trust Company is not now and could not become a trustee until the death of the complainant Phebe A. B. Smith; that since it was not yet a trustee under the will, it could not enter into an agreement or understanding concerning the taking over and maintaining of the property in question; and that it could not presently state what position it could or would take in the matter when, if ever, its nomination as trustee should become effective.

The primary and well-settled rule of testamentary construction is to ascertain the testator's dominant intent from the whole will and then to give effect thereto, unless it is contrary to some established principle of law. *Caramatro* v. *Caramatro*, 78 R. I. 402. Such intent must be ascertained only from what is actually expressed in the will itself and from implications necessarily following from the language employed by the testator without resort to conjecture or speculation. *Bliven* v. *Borden*, 56 R. I. 283, 288; *Industrial Trust Co.* v. *Lathrop*, 72 R. I. 62, 66, 67. Whether the tes-

tator's intention and purpose, if lawful, was wise or unwise is no concern of the court as it is without power to remake the will.

The first certified question is whether the will creates a charitable trust. Although the language of the testator requires interpretation with reference to the nature and extent of the trust created by him, we note that he clearly intended to entitle his wife, Phebe A. B. Smith, to occupy the Babcock House as her home following his decease. But after her death he plainly restricted the use of that house for residential purposes to the north portion thereof and then only for the accommodation of caretakers.

The determination of whether a given devise or bequest constitutes a legal charity necessarily depends upon the facts in each case. In general terms, as stated with approval in *Kelly* v. *Nichols,* 18 R. I. 62, at page 65: "A charity, in the legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature." In case of doubt as to whether a gift is charitable a construction favoring a public charity is preferred. *Powers* v. *Home for Aged Women,* 58 R. I. 323, and cases cited.

Before proceeding further in our consideration of the question under discussion, we call attention to the fact that there is an inconsistency between the provisions of the second and third paragraphs of the will. In the second paragraph the testator purports to give the widow such of the household furniture as she may select, while in para-

graph Third (a) he expressly directs that his home "with the *antique furniture* and equipment therein *to be retained intact* and maintained as a memorial and as an example of Colonial architecture and furnishings * * *." (italics ours) In the case of such provisions it is usually the rule, if consistent with law and reasonably possible, to reconcile them in order to give effect to the whole will.

A mere reading of that instrument shows that the ultimate object of the testator was to devote his residuary estate to public uses. Whether he succeeded in accomplishing that purpose will be presently considered in greater detail. In the meanwhile our determination of the abovementioned inconsistency is as follows. Bearing in mind his ultimate object and the explicit language used by him respecting the antique furniture in paragraph Third (a), it is our judgment that he intended to give his wife the furniture in the Babcock House which she might select and which did not fall into the category of antique Colonial, and that as to such antique furniture his intention was to give her the use thereof in connection with her occupancy of that house until it became a public charity to be administered by the trustee designated in the will. This interpretation of the testator's intention in the matter would be nugatory if, as complainants contend, the trust were found to be of a personal and selfish nature and therefore invalid because of the rule against perpetuities.

Resuming our consideration of whether by paragraph Third (a) of the will the testator created a residuary trust for charitable uses, it is to be noted that he explicitly included in the trust his "real estate, at numbers 122 and 124 Granite Street in the Town of Westerly," hereinbefore identified as parcel 1 and parcel 2 respectively. We recall that the house on parcel 1 is modern and rented, while the Joshua Babcock House, with its antique furniture, which is located on parcel 2 and was used by the testator as his home, dates back to early Colonial times.

The inclusion in the trust of the income-producing property known as 122 Granite street is significant. If the testator succeeded in creating a valid charitable trust in paragraph Third (a) of the will, then it is reasonable to infer that by including that property as a part of the trust his intention was to provide income to assist in the maintenance of the premises designated as 124 Granite street, upon which the Joshua Babcock House is located. In the event that no income were forthcoming from 122 Granite street it would be incumbent on the superior court, upon representation of the trustee, to determine whether that property should be sold to provide a fund that would produce income.

A careful consideration of the pertinent provisions of the will convinces us that the testator intended to and did create a charitable trust. His ultimate object was threefold in character. First, he intended to preserve for posterity the Joshua Babcock House as a memorial to a distinguished citizen of this state in the days of the American Revolution. Secondly, he intended to conserve that house as "an example of Colonial architecture and furnishings." And thirdly, if the Babcock House were destroyed or damaged beyond repair, he intended that the land be cleared and "laid out as a park for the use and enjoyment of the public under suitable restrictions * * *." All three of such purposes are essentially charitable uses.

When the testator provided that his home be maintained as a memorial to Joshua Babcock, his intention was not to establish a private memorial for personal reasons because, in so far as we are informed, he was in no way connected with Babcock by descent or otherwise. It was to call to public remembrance the various contributions in Colonial times by a distinguished citizen of this state in establishing an entirely new government for our people. See 3 Field State of Rhode Island and Providence Plantations at the End of the Century: A History, p. 632. Considered from that point of view, the provision for such a memorial was in-

tended to stimulate the education of the public in the history of our state and thereby to foster a firm devotion to the traditions of this country as a free nation. The testator further believed that the Joshua Babcock House should be preserved for its educational value in the study of American architecture. Similar dispositions, although broader in scope, were held to be charitable trusts in *Faunce* v. *Peoples Savings Bank,* 46 R. I. 75, and *Rhode Island Hospital Trust Co.* v. *Benedict,* 41 R. I. 143. The charitable intent of the testator in providing that under certain conditions the property under consideration should be cleared and laid out as a public park requires no discussion. By that provision he clearly intended to provide a place for recreation and relaxation by the people generally. See 10 Am. Jur., Charities, §79, p. 641.

After careful consideration it is our opinion that in paragraph Third (a) of his will the testator created a valid charitable trust of the properties herein described as parcels 1 and 2 and identified in said paragraph as 122 and 124 Granite street in the town of Westerly. Therefore our answer to the first certified question is in the affirmative.

In view of the complex nature of the bill of complaint which raises a number of issues of fact that must first be determined on their merits from competent evidence, we decline to answer the second certified question hereinbefore quoted.

The papers in the cause are ordered sent back to the superior court for further proceedings.

BAKER, J., did not participate in the decision.

*Grim & Littlefield, Benjamin W. Grim,* for complainants.

*William E. Powers, Atty. Gen., Albert J. Hoban, Ass't Atty. Gen.,* for State.

*Tillinghast, Collins & Tanner,* for respondent Washington Trust Company.