MYER MILLMAN, *Admr. vs.* BERTHA E. STREETER *et al.*

APRIL 10, 1941.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

342

FLYNN, C. J.   This cause is before us on the appeal of the respondent Bertha E. Streeter from a decree in equity, entered in the superior court, ordering the payment and delivery to the complainant of certain money and other personal property claimed by said respondent as a gift from complainant's intestate.

The complainant is administrator of the estate of Dr. Sheffield Smith, who died intestate in August 1937, at the age of eighty-three years. Bertha E. Streeter will hereinafter be referred to as the respondent, the other respondent being the probate clerk who was joined merely as an appointed custodian of the money in question. The respondent, though not related to the doctor or his wife Jeannette, had been from childhood an intimate friend of both, particularly of Mrs. Smith. Doctor and Mrs. Smith died without issue.

Jeannette Smith had died before Dr. Smith, in April 1937, leaving a will by which she gave to him a life estate in her real and personal property, together with the right to sell or dispose of the same for his comfortable support and maintenance. The remainder, if any, after his death was given

over to the doctor's brother. The latter, however, died before the testatrix.

For some years before his death Dr. Smith had retired from active practice because of a serious ailment which required medical care and attention. Elizabeth L. Hogg had administered electric treatments to him and had acted as his chauffeur. Prior to the death of his wife she had also attended Mrs. Smith as a nurse and companion. She continued in the service of Dr. Smith after his wife's death. Miss Hogg refused however to accompany him on a proposed trip to California because, as she said, his health was in no condition to withstand the rigors of such a long trip. Apparently for that reason Dr. Smith quarreled with her and terminated her employment or activities on July 5, 1937. He then demanded and received from her the return of a key to a safe deposit box in the Industrial Trust Company, which stood jointly in the names of himself and Miss Hogg.

Doctor Smith thereupon purported to make some dispositions of his property to the respondent. His deeds to her of certain realty were involved in the suits of *Whitmarsh* v. *Streeter,* 62 R. I. 411, and *Nelson* v. *Streeter,* 65 R. I. 13, 13A. 2d. 256. He purported also to make certain dispositions of money and some other personal property to the respondent, who had agreed to go with him on the trip which Miss Hogg refused to take.

Doctor Smith and the respondent started on the trip, the tickets having been purchased with some of the money allegedly given by him to the respondent. They were forced, by the doctor's health, to turn back before reaching their destination and, on his return in August 1937, Miss Hogg was invited by him to call at his house. She did so and at that time the doctor made certain explanations of his transfers of property to the respondent and offered certain inducements to Miss Hogg to influence her to return as his nurse and chauffeur; and to right the wrong which he said he had

done to her, presumably by such transfers to the respondent. According to Miss Hogg, the doctor said he still had control of certain property which he purported to have given to the respondent. There was other evidence, including testimony and conduct by the respondent at other previous hearings or trials, which had a material bearing on her testimony and claims in the instant cause.

The trial justice decided upon all the evidence that the respondent, as claimant of the property, had not established a completed gift *in praesenti* in any of the personal property in question. The respondent's reasons of appeal from the decree, entered in accordance with that decision, are numerous but may be summarized as raising two principal contentions, *viz.*: First, that the trial justice misconceived the theory and law relating to the respondent's claim, as a joint tenant, to the money in the safe deposit box; and second, that even if the cause be decided upon the basis of a gift *inter vivos,* the decision was against the clear weight of the documentary and other evidence, particularly as to the money.

The respondent relies chiefly on her first contention, relating particularly to the sum of $12,000 that was placed by the doctor in the box rented from the Citizens Safe Deposit Company. This box was hired and paid for by the doctor but was registered in the names of Sheffield Smith and the respondent by an agreement dated July 14, 1937, which reads as follows:

> "We agree to hire and hold Safe No. 7179 in the Citizens Safe Deposit Co.'s vault, as Joint Tenants, the survivor or survivors to have exclusive right of access thereto for any purpose including right to remove contents in case of death of either, and either to have power to appoint a Deputy. Either of the tenants has the right to surrender the safe.
>
> "We acknowledge a receipt from the Citizens Safe Deposit Company covering rent of within described safe

and agree to the rules and regulations as printed thereon and to such reasonable amendments or additions thereto as may be hereafter adopted. We also acknowledge receipt of two keys.

"Signed Bertha E. Streeter      Signed Sheffield Smith"

She now argues that the money which was thus placed in the box belonged to her because a joint tenancy therein had been created by the above agreement; and that such agreement must be accepted as conclusive evidence of the existence of such tenancy. We cannot determine from the transcript whether this argument was made to the trial justice as clearly as it is now made to us. However, if we assume that it was so made and that the trial justice overlooked or misconceived it, the principal question is whether that agreement with the Citizens Safe Deposit Company conclusively created, as between Dr. Smith and the respondent, a true joint tenancy in the contents placed in the box by the doctor.

In our opinion the agreement, by itself, did not create a true joint tenancy. The law in this state recognizes that a joint tenancy may be held by two or more persons in personal as well as real property. General laws 1938, chapter 431. See *Industrial Trust Co.* v. *Scanlon,* 26 R. I. 228, 231. However, in the absence of any other controlling statute, a true joint tenancy has always been characterized by the existence of all the four unities of time, title, interest and possession.

Under this agreement, the company had no title, interest, or possession in the money which it could transfer to the tenants at the time of the execution thereof. Only the safe deposit box was then in its control to lease to them. Nor does the agreement purport to use the company as a conduit through which the contents of the box were transferred to the alleged joint tenants so as to vest in both of them the same title, interest and possession.

The agreement, as between the tenants, does not effectuate a true joint tenancy in the safe itself, which we have called the box, much less in its contents. Following their agreement in the first sentence of the first paragraph, which is merely "to hire and hold Safe No. 7179 . . ., as Joint Tenants, . . .", they expressly stipulate in the very next sentence of that paragraph: "Either of the tenants has the right to surrender the safe."

This language negatives a true joint tenancy in the box. If one tenant had the right under this agreement to surrender the box to the exclusion of the other, then certain essential characteristics of a joint tenancy, as at common law, would be negatived because in such a tenancy each would hold the whole box by the same kind of title, interest and possession. The same objection would lie if this agreement should be construed as relating not only to the holding of the box but also to the removal and use of the contents thereof. Moreover, the conduct of the tenants, during the life of the doctor, was at variance with the claim of a true joint tenancy. Thus neither the agreement by itself nor in connection with the evidence can be considered as conclusively creating or establishing a true joint tenancy, as respondent chiefly contends.

The respondent, however, has cited certain cases from other jurisdictions in support of her contention upon this point. Among these are *Graham* v. *Barnes,* 259 Mass. 534; *New Jersey Title Guarantee & Trust Co.* v. *Archibald,* 91 N. J. Eq. 82; *Chippendale* v. *North Adams Savings Bank,* 222 Mass. 499; *Erwin* v. *Felter,* 283 Ill. 36. It is conceded that some language is found in these cases which seems to lend assistance to her contention. However, we do not think that any of those courts intended to go so far as the respondent contends here, namely, that such an agreement, apart from statute, is in itself conclusive on the question of the creation of a joint tenancy as at common law.

We are inclined to the view that those courts referred to a joint tenancy as meaning really a holding by two or more persons of a qualified joint interest in personal property, including also the exclusive right in the survivor to claim what remains thereof on the death of the other. But if those references to joint tenancies were intended to mean that the language of such an agreement, as here, by itself conclusively created or established a joint tenancy, as at common law, in the contents of a safe deposit box, we are not persuaded that we should follow them. Applying our view of the law to the instant cause, the respondent's first contention, that this agreement by itself *conclusively* created or established a true joint tenancy, cannot be sustained.

The respondent's second contention was stated but not pressed strenuously, perhaps because of the difficulties in reconciling it with her previous testimony, conduct and contentions as to the nature of her claim. However, this contention must be based entirely on an alleged completed gift *inter vivos*. The money was the sole property of the doctor. The respondent contributed no part of it at any time. The agreement was made without any valuable consideration. In these circumstances the law generally stated as to such gifts must be applied and therefore the burden was on the respondent to establish by satisfactory evidence a completed gift *in praesenti* of a joint interest in the money, with the attendant right of survivorship. *Stiness v. Brennan,* 51 R. I. 284; *Old Colony Cooperative Bank* v. *Burger,* 63 R. I. 223, 7 A. 2d. 725.

In support of this contention the respondent relies chiefly upon a construction of this agreement which would make it relate to the contents of the box substantially as if such contents were a bank deposit in both names and payable to either or the survivor. We have serious doubts whether the language thereof may be properly construed thus far, or so as to grant to the respondent any rights to remove and

to have and use *all* the contents of the box during the doctor's life. The only specific reference in the agreement to the contents of the box, or their removal, is the express right given to the survivor or survivors—not to the tenants—to have access thereto for any purpose including the right to remove them in case of the death of either. That is quite different from agreeing that all of the money could be removed and used by either at any time during the life of the other, and that the survivor of them would have exclusive right of access and removal of whatever remained of the contents. It should be noted that the ordinary so-called joint bank deposit is made expressly payable to *either or* the survivor.

Literally construed the agreement appears to contemplate only a gift to become effective to respondent as the survivor, which would support the view of the trial justice that it was in the nature of a testamentary disposition rather than a present and completed gift. On such a construction, the instant case would be quite different from a bank deposit standing in both names and payable to either or the survivor; and it clearly would not support the respondent's contention that the doctor intended and completed a gift *in praesenti* of a joint interest in the money, with all its attendant rights. In any event, the fact that this agreement is clearly open to the construction of a gift in the nature of a testamentary disposition greatly weakens any argument that the agreement was as strong evidence of a completed gift *in praesenti* as if it were a so-called joint bankbook that was delivered to and held exclusively by her, and that was unequivocally payable to either or the survivor.

However, assuming that the agreement was open to the construction whereby either tenant would have the right not only to remove but to have and use *all* the money before the death of the other with the right of survivorship, the case then would be governed in principle by the law as stated

with reference to alleged gifts of a joint interest in a bank deposit.

In such cases we have held that the controlling question, as in all cases of gifts *inter vivos*, is always the donor's true present intent; that the form of the deposit is not conclusive; and that it may be considered with all other facts and circumstances in ascertaining the true intent of the donor. *Peoples Savings Bank* v. *Rynn*, 57 R. I. 411; *Weber* v. *Harkins*, 65 R. I. 53, 13 A. 2d. 380. Heretofore, in a contested case, based on an alleged gift *inter vivos*, mere possession of the bankbook, or its equivalent evidence, or mere lack of possession thereof, has not been considered in itself as necessarily controlling on the question of donative intent and gift. *Marston* v. *Industrial Trust Co.*, 107 A. 88 (R. I.); *Old Colony Cooperative Bank* v. *Burger, supra*. Such matters or their equivalent are therefore not conclusive but are to be considered with all the facts and circumstances in evidence in determining the donor's true intent, and the existence of a completed gift.

Applying this law to the assumption that we have above made, it follows that the form of the agreement was not conclusive. The trial justice was entitled to consider all the evidence before him relating to the respondent's alleged right to the money in question, which evidence included the conduct of the tenants of the box under the agreement, and of the respondent during the doctor's life and immediately after his death. Among other things, the trial justice had a right to consider the shifting by the respondent of the basis of her claim under this contention from a different basis as made at previous hearings and in this cause; the conflict between certain of her conduct and her present testimony; the conflict between certain of her testimony and that of Miss Hogg and of the jeweler; the exercise by the doctor alone of the right during his life to use any and all of the money; the repeated instances where respondent testified

"I don't remember" to certain matters that showed material conflict between her previous testimony and conduct and her present testimony and claim; the respondent's testimony that *she* had added the doctor's name to the box as a matter of "convenience" as contrasted with other facts and testimony to the contrary; and certain testimony of the respondent which is open reasonably to an inference that the respondent herself knew and felt that all of the doctor's alleged gifts to her were made because, as she said, he wanted everything in order "if anything happened to him."

These and other matters appearing throughout the travel of the cause, which had several previous hearings in the probate court of North Providence, as brought out in evidence, presented a situation where, in our opinion, there were material conflicts in the evidence from which different and reasonable interpretations could be drawn. The trial justice, who had an opportunity to see and hear the witnesses, apparently considered all the evidence and found that the alleged gifts of this money and other articles were not completed *in praesenti* but were all in the nature of testamentary dispositions and therefore void under the statute of wills. Upon examination of all the evidence, we cannot say that his findings thereon were unreasonable or clearly wrong. This is particularly true when, as here, the respondent, as one claiming by way of gift *inter vivos*, had the burden of establishing the alleged gift by satisfactory evidence. *Stiness* v. *Brennan, supra; Old Colony Cooperative Bank* v. *Burger, supra.*

The contentions above considered relate more particularly to the $12,000, or the balance thereof, which was in the safe deposit box. The respondent also claimed gifts of jewelry and other personal property. We have examined the evidence with reference to all of these alleged gifts and cannot say that the trial justice was clearly wrong in finding that they were at best in the nature of an attempted testament-

ary disposition, and, therefore, must fail for lack of compliance with the statute of wills. G. L. 1938, chap. 566, sec. 1 et seq.

The only exception perhaps might be found with relation to the lady's rings and brooch which formerly belonged to Mrs. Smith. The respondent however apparently based her present claim solely on the theory that they belonged to Dr. Smith and that he had the right, under his wife's will, to dispose of them by gift. Restricted to this theory, the trial justice was not in error. If the wife's bequest to the doctor for life included this jewelry, and gave him the right to sell or dispose thereof for certain specified purposes, he had no right under the will to make a gift or to dispose of such jewelry except for such purposes. *Gardner* v. *Whitford,* 23 R. I. 396; *Knight* v. *Knight,* 61 R. I. 187. Apparently the respondent did not raise the issue, and we do not decide, whether such articles of jewelry formerly belonging to Mrs. Smith were actually given by her to the respondent, using the doctor merely as her agent to deliver them.

The appeal of the respondent is denied and dismissed; the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

CONDON, J., dissenting. The reason for my dissent lies in the fact that I take an entirely different view of the evidence from that of the majority of the court. The evidence shows, in my opinion, a joint ownership in the contents of the safe deposit box in the respondent, Bertha E. Streeter, and Dr. Sheffield Smith, with the right of survivorship. For convenience, Bertha E. Streeter will hereinafter be referred to as the respondent. In reaching this conclusion I have given the form of the agreement for the rental of the safe deposit box great weight, especially in view of the fact that there is no testimony which directly contradicts the statements contained therein and little, if any, evidence of an indirect nature by way of inference. Indeed, such evidence, from

which it is sought to draw inferences contrary to the form of the agreement, is, when properly considered, only remotely, if at all, of a contrary nature. The majority opinion strives to make such evidence appear more formidable in apparent contradiction of the agreement than it really is when it is carefully read and analyzed in connection with the whole record.

On the other hand, the testimony in support of the agreement is, in my opinion, substantial and convincing. The box was hired in the names of Mrs. Streeter and Dr. Smith, but the receipt therefor was made out to her, and the two keys for the box were given to her. It further appears that she kept these keys constantly in her possession, except on one occasion when she allowed Dr. Smith to take one key and go to the box to get some money to purchase tickets for a trip to the West which he and the respondent were about to take. He afterwards returned the key to her. The uncontradicted testimony as to this incident is that Dr. Smith asked the respondent to go to the box; that she replied that she was too busy at the house to do so at the time; and that she told Dr. Smith to go himself and gave him the key. Although the box was hired at the suggestion of Dr. Smith and only his money was placed therein, respondent testified that his name was included in the agreement for *her* convenience. The evidence of the above incident of Dr. Smith requesting her to go to the box, and of her sending him instead is corroborative of such testimony. If the testimony of respondent had been the other way, namely, that Dr. Smith had included her name in the agreement for *his* convenience, it would have tended to rebut a gift from him to her in his lifetime.

Respondent testified both in the probate court and in the superior court that Dr. Smith wanted her to have the money. Something has been made of a variance in such testimony on this point in those courts. From her testimony in the

probate court it would appear that respondent claimed exclusive ownership of the money by way of an absolute gift from Dr. Smith; whereas in the superior court her testimony leans toward the idea of a gift to her of a joint interest in the contents of the box. In my opinion this is not important. The most that can be said of her testimony in this respect is that it is not consistent as to the extent of the gift which is claimed. The significant thing to note is that neither her testimony in the probate court nor in the superior court supports the claim of the complainant that there was no gift. On the contrary, on both occasions respondent's testimony is definitely to the effect that Dr. Smith did give her this money, and the statements contained in the rental agreement and subscribed to by Dr. Smith are consistent with such testimony.

The majority, in order to buttress a doubt in their minds that the instant agreement is akin to a joint bank account and governed by the same principles, rather labor the point that the agreement contemplated a gift of the contents of the box only if the respondent survived Dr. Smith, and not a gift *in praesenti*. To reach such a result they give, what seems to me, a strained construction of the plain language of the agreement. By the very terms of the agreement either had access to the box and, of course, could remove the contents. But when the death of one party occurred, the joint ownership was broken and it was in such an event that the agreement quite naturally went on to say that the survivor should have *"exclusive* right of access" to remove the contents. (italics mine) The emphasis here is on the word *exclusive*. The agreement sought to make clear beyond question that the joint ownership, existing in the lifetime of both parties to the agreement, carried with it the right of survivorship, and that only the survivor should have access to the box and the right to remove its contents.

I agree with the majority that the burden is upon the respondent in this course to prove the gift to her from Dr.

Smith, and I have no fault to find with the numerous decisions of this court which have clearly laid down the principle that he who alleges a gift must prove it. But I cannot agree with the majority that the cases of *Stiness* v. *Brennan*, 51 R. I. 284 and *Old Colony Cooperative Bank* v. *Burger*, 63 R. I. 223, 7 A. 2d. 725 are apt citations for the purpose of elucidating the application of that principle to the facts of the instant cause. In each of those cases there was no joint account. The claimant merely had in her possession the bankbook of the alleged donor at the date of the alleged donor's death and was seeking to prove a gift to her of the bankbook. Under such circumstances the claimant of the gift in each of those cases carried a heavy burden and was without the very great assistance which each would have derived had the account been in the alleged donor's name and the name of the claimant jointly, and been payable to either or the survivor. It is this added circumstance in the instant cause by way of the form of the safe deposit box agreement which, in my opinion, makes the respondent's claim so strong and which it seems to me the trial justice entirely overlooked.

I do not hold that the mere possession of the bankbook—in the instant cause the keys to the safe deposit box—is controlling on the question of donative intent, but I do say it is a fact of great importance in the case of a joint account. When this court stated in *Marston* v. *Industrial Trust Co.*, 107 A. 88, 89, (R. I.): "Delivery of the bank book is not a prerequisite to the creating and passing of a joint title in a savings deposit", it was enunciating a principle that favored the form of the deposit subsisting at the death of the alleged donor as strong evidence of his intention to make a gift to the survivor rather than the opposite. That this is so is amply demonstrated by the following sentence from the same paragraph of the opinion in that case wherein the above-quoted sentence appears: "When it is clear that the intention of the parties is to create a joint account so that

both of the parties have an equal right to draw on the funds, it is immaterial which holds the book."

In that case the survivor who was claiming a gift of the account never had possession of the book in the lifetime of the alleged donor and did not have it after her death, it being in her safe deposit vault at her bank, yet this court sustained the superior court's finding that the account belonged to the claimant in accordance with the form of the deposit. In my opinion, that case is one that could be cited in support of the claimant's contention in the instant cause. Indeed, a reading of it might well make one wonder why the evidence there was found sufficient to prove a gift to one who never had an opportunity to exercise dominion over the account in the lifetime of the alleged donor and why the evidence here, wherein the claimant had exclusive possession of the keys to the box, is found insufficient.

On the view which I take of the instant agreement, it is essentially the same as that of a bank deposit made by one in the name of himself and another jointly, and payable to either or the survivor; and the same principles should be applied here as have been applied in determining who is the owner of such an account upon the death of the alleged donor.

These principles have been established by a series of cases decided by this court over a long period of years. The most important of such cases for our present purpose are *Raferty v. Reilly*, 41 R. I. 47; *Industrial Trust Co. v. Scanlon*, 26 R. I. 228; *Whitehead v. Smith*, 19 R. I. 135. In each of those cases the facts were very like the instant cause in that the bankbook was given by the donor to the donee of the joint interest when the donee's name was added thereto by the donor or a short time thereafter, was continuously thereafter in the possession of the donee, and was in his possession at and after the donor's death. Under such facts this court has held that the intention of the alleged donor gov-

erned; that such intention may appear in the statement of the depositor, or it may be shown by his acts and the attendant circumstances; and that the form of the deposit was consistent with an intention to make a gift of an interest in the deposit. In each of the cited cases the court found a gift in the survivor on evidence no stronger than, and in some respects not as strong as, the evidence in the instant cause. Indeed, the instant cause impresses me as one where the evidence not only does not tend to contradict the intent of the donor as shown by the form of the agreement for the safe deposit box, but strongly confirms it.

I, therefore, find it impossible, consistently with our decided cases, to support the finding of the trial justice on the evidence before this court. On the contrary, it appears to me that there is practically no evidence here that negatives the *prima facie* evidence of the donor's intention, as shown by the form of the deposit, and as corroborated by the testimony of respondent concerning Dr. Smith's statements and conduct in relation to the hiring of the safe deposit box and the money which he had placed therein. But even if it be considered that there was some such negative evidence, indirectly by way of inference, it nevertheless is too remote and inconsequential. Clearly it falls far short of even equalling the weight of the respondent's evidence in support of the alleged gift. On the whole record, as I view it, the trial justice's finding is clearly wrong since, in my opinion, it is decidedly contrary to the great weight of the evidence.

*Francis J. O'Brien, J. Raymond Dubee,* for complainant.

*Voigt, Wright, Munroe & Clason, Ernst T. Voigt, Nathan M. Wright, Jr.,* for respondent Bertha E. Streeter.