[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This litigation was commenced in September 1993 by Bertha F. Hayden, the sister of Lawrence E. Hayden, for the purpose of interpreting the language under the will of William H. Hayden, their father. While the matter was pending early in March of 1994, Bertha conveyed the interest she acquired from her father to John B. Hayden and Dale A. Hayden, her nephew and his wife, who were also the nephew and niece-in-law of Lawrence. All three, Bertha, John and Dale were then made parties plaintiff.
This matter evolved about a will executed by William H. Hayden (testator) on June 18, 1982. The testator died January 11, 1992, and his will was duly probated in the Town of Tiverton.
Under the will, one parcel of land was divided. A portion was devised to Lawrence by metes and bounds and the remaining portion was devised to Bertha.
A second parcel was to be sold with the proceeds to be divided among 5 other children, but Lawrence was given the right of first refusal at the fair market value. Lawrence exercised this right and acquired the second parcel.
The estate was duly closed. However, disputes arose between Lawrence and Bertha as to 3 basic issues:
1. Exactly what was devised to Lawrence;
2. What were the effects of certain easements and;
 3. What was the extent of Lawrence's use of the right-of-way.
 1. The devise to Lawrence
The devise as stated in the will unfortunately was neither precise nor accurate. As events developed, no surveyor could lay out on a sketch all the necessary incidents including a drainage area within the bounds as to the overall dimensions given by the testator. The lines, courses, angles and distances, to say the least, were incompatible. The parties with some advice by the Court, and the actions of their attorneys, have finally arrived at a solution to this vexing problem. A survey plan is attached hereto and made a part hereof. The description of the parcel allocated to Lawrence is as follows:
 "That certain tract or parcel of land, situated easterly of Highland Road, in Tiverton, County of Newport, State of Rhode Island, together with the improvements standing thereon, described as Parcel "A" as shown on that certain plan of land entitled, "Minor Subdivision Plan for William H. Hayden Estate ____ Map 1-10 Block 92 Card 46 Tiverton, RI Dwg No. 040903 Date: 10/18/04" to be recorded in the Land Evidence Records of Tiverton, RI."
Although it has taken some time to reach this result, I can only commend the parties and their attorneys for reaching what I believe is an appropriate result as to this issue, in accord with what had to be the intention of William.
The parties are ordered to file a subdivision plan for approval and recording with the appropriate authorities of the Town of Tiverton to create a division of the land in accordance with this Decision. The Judgment shall also provide that, if the appropriate authorities of the Town do not, for any reason, approve the recording of the subdivision plan, either or both of the parties may return to this Court for an appropriate order directing such approval and recording.
 2. The Easements.
Utilities for electricity, cable, water and telephone in some part come to, through or by way of the house owned by John and Dale. They now have indicated no hostilities to the easements as they exist.
 3. The Right of Way
In order to understand the dispute as to the right-of-way, some background is needed. The will of William Hayden was executed in June of 1982. It contained the devise to Lawrence plus this language at Article IV(c).
 "Said real estate is devised together with a right of way and easement to the said Lawrence E. Hayden, his successors and assigns to pass and repass by foot or by vehicle over the driveway leading easterly from Highland Road over and across the land hereinafter devised to my daughter, Bertha F. Hayden."
The will also contained the devise to Bertha in Article IV(d). with the following additional language:
 "Said real estate is devised subject to the right of way of my son Lawrence E. Hayden, his successors and assigns to pass and repass by foot or by vehicle over and across the existing driveway running easterly from Highland Road across said premises to land herein before devised to the said Lawrence E. Hayden."
The language except for "easement" in the paragraph for Lawrence and "existing" in the paragraph for Bertha are almost the same.
The subject matter which creates the difficulties, is the parcel of land referred as the "second parcel" stated earlier which was subject to the right of first refusal in Lawrence. This parcel identified as "second lot — 4.93 acres" on the attached survey plan, lies to the east of both Bertha's devise and Lawrence's devise. For years, while William (the father) owned all the land, this parcel was served only by the driveway (the right-of-way herein) which at best is 10 to 12 feet in width from Highland Avenue running up hill to the parking area, used for vehicles by the parties to access the eastern portion of the devised parcels to Lawrence and Bertha. All of the land encompassed in the will was acquired by William and his wife in 1951. On it were the main house and other minor structures including what has been described as a horse barn and a carriage barn, to which was added a wash stall which buildings later became a garage.
Lawrence took over the garage in 1961, after having lived with his parents in the main house. Over the years through a dint of hard work he converted the garage into a house, and then maintained, altered and improved the entire parcel acquired in 1951 by his parents. He cultivated various woods for burning, and also grew engineering wood (which was not explained), raised sheep, repaired fences and stone walls, etc. In 1982, he bought 100 seedling Christmas trees which he planted in the "second" parcel in 1983. About 37 Christmas trees were first sold in 1989; 70 trees were sold in 1990 and 100 were sold in 1991. Over the next years, from 1991 to 1995, Lawrence would sell 100 to 150 or more trees each year as well as some trees he provided for friends and relatives. The selling period for the trees occurs from early November to Christmas. Some customers came once, others twice, once to pick the tree and the second time, to take it away. (Most activity takes place on weekends). Assuming 1/3 required one visit and 2/3, two visits, there would be some 250 trips up the driveway and down the driveway (some few trees were sold where the customers would walk up the hill and pick out their tree and return to their car on the main road to carry them home by vehicle.) Assuming 250 trips and 7 weekends, then some, up to 20 trips would occur on Saturday and Sunday. Needless to say, these assumptions are based on Lawrence's figures. I'm sure some weekend days there would be more, some less.
The driveway is at best 10 to 12 feet wide. No vehicles can pass each other as they proceeded up or down between Highland Avenue to the parking area. At various times a vehicle could back down to Highland or back up to the parking area but generally one or the other would pull off the driveway onto the abutting grass areas, leaving ruts.
When William, the father, drew the will in 1982, there was no tree farm, and in 1991 only 100 trees sold. When the father died in January of 1992, there appears to be no reason to assume that Lawrence had a substantial "business" endeavor at the time of William's death or any reason why William should take this into consideration as to the use of the right-of-way. True, Lawrence carried on various activities over the years, but so long as his father lived there was no limitation on the use of the right-of-way because of Lawrence's activities until some time in 1990. William had or would have had little reason to be more precise as to a limitation on the use of the right-of-way. But there is no indication that William (the father) intended anything more precise as to the language of the right-of-way, other than what appears in the will.
The plaintiffs have argued that the second parcel has a 30 foot driftway which Lawrence could use to get to the second parcel as well as his devised estate. Lawrence indicates that driftway is not available as it is overgrown and has large trees. The difficulty with that argument is, it is overgrown today and was when he testified in late 1995, early 1996, but what was it like in 1992 or 1982, or before that. Until 1992, there was no need to consider the driftway as access to the second parcel as William had access to all the land. Now it should be considered, for in 40 years from 1965 to 2004, the trees and vegetation have grown.
Defendant argues that we should look into the events to interpret the use of the right-of-way. But many prior decisions by our Supreme Court indicate that when the language is clear and unambiguous there is no need to look beyond the language. This Court cannot see any ambiguity in the language used in William's will, and there is no indication as stated above that William intended more activity than he stated in the will.
Counsel argues among other cases, that of Lancelotti v. Lancelotti,377 A.2d 1315 R.I. (1977) that:
 "Resort to rules of construction will be had only when there is ambiguity or doubt as to testamentary intention or language equally susceptible of conflicting interpretations."
Taking the above language as presented, none of the evidence brings ambiguity into the dispositive language. There is evidence that it might have been a better result to grant use of the right-of-way for the tree farm had certain facts come into play before the death of William, but it is not for this Court to say what should or could have been done. There is nothing in the record to indicate that the language in the will was not what the testator intended or could have intended. It was not until 1992 that there was any great use of the driveway for the tree farm. Previous to 1992, there was only minor use of the driveway for the use of the tree farm.
 Conclusion
The Court finds that the defendant cannot use the right-of-way except to pass and repass by and for his family, visitors, and necessary services to his home and person but certainly not for the access for service to the tree farm business/occupation/hobby.
Having said that, with or without the results of this decision, the parties have to do something as to the right-of-way. Enlarge it, so that persons arriving or leaving will not be faced with the dilemma of backing or crossing the grass areas or agree between both sides to either prepare the driftway or create a way on the northerly side of plaintiffs' property from Highland Avenue.
No matter what occurs, until the parties abandon the driveway as a right-of-way for Lawrence and get a different access for him, both parties property has a very diminished value and neither will obtain maximum value for their property.
The parties may present a judgment.